UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAVE OUR SCHOOLS–SOUTHEAST & NORTHEAST, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DISTRICT OF COLUMBIA BOARD OF EDUCATION, et al., <br><br> Defendants. | Civil Action 04-01500 (HHK) |

MEMORANDUM OPINION

Save Our Schools – Southeast and Northeast ("SOS"), a community-based nonprofit association, and seven of its individual members, bring this action alleging that Two Rivers charter school and the District defendants[1] violated the Fifth Amendment's Equal Protection principles. Defendants have moved for summary judgment, asserting that: (1) plaintiffs do not have standing to prosecute this suit because they have not demonstrated injury; (2) there is no evidence that any defendant acted with discriminatory intent in violation of Equal Protection principles; and (3) to the extent that plaintiffs assert that the District defendants conspired with Two Rivers, plaintiffs have failed to put forth any evidence of a conspiracy [#79, 80, 81]. Upon consideration of the motions, the opposition thereto, and oral argument of counsel, the court

---

[1] "District defendants" refers to all defendants other than Two Rivers, including: the D.C. Council and two of its members at the time the complaint was filed (Sharon Ambrose and Kevin Chavous); the D.C. Board of Education and eight of its members when the complaint was filed (Tommy Wells, Peggy Cooper-Cafritz, Robin Martin, Laura Gardner, Mirian Saez, Carrie Thornhill, Julie Mikuta, and Dwight Singleton); former Mayor Anthony Williams; the D.C. Public Schools and the school system's former acting superintendent, Dr. Robert C. Rice; Josephine Baker; Tamara Lumpkin; and Margaret Spellings, Secretary of the U.S. Department of Education.

concludes that defendants' motions must be granted because plaintiffs do not have standing to pursue this action.

## I.  BACKGROUND

A full explanation of the background of this action may be found in this court's previous Memorandum Opinion and Order, *Save Our Sch. – Se. & Ne. v. D.C. Bd. of Educ.*, 2006 WL 1827654 (D.D.C. July 3, 2006), which resolved defendants' motions to dismiss.  Insofar as is presently pertinent, it is sufficient to recite that plaintiffs allege that Two Rivers was founded by affluent White families who felt that the District of Columbia's public school system ("DCPS") was "too black."  Animated by their feeling regarding the racial composition of DCPS, the founders of Two Rivers, plaintiffs assert, sought to limit the number of enrolled Black students at Two Rivers by engaging in discriminatory outreach and recruitment methods, such as by focusing its recruitment in neighborhoods with high concentrations of White and Latino residents and ignoring neighborhoods with high concentrations of Black residents.  Plaintiffs also contend that the "inherent structure" of Two Rivers operated to limit the number of enrolled Black students.[2]  As for the District defendants, plaintiffs allege that they were aware of Two Rivers' discrimination, but nonetheless provided governmental support to the school, such as by helping Two Rivers find space in which it could operate.

---

[2]  By referring to "inherent structure," plaintiffs are referring to the fact that Two Rivers, *inter alia*, had small class sizes, enrolled only grades K-3 when it first opened, and had a sibling preference.

## II.  ANALYSIS

As a threshold matter, the court must address the question of whether plaintiffs have standing to pursue this action. *Lance v. Coffman*, 127 S. Ct. 1194, 1196 (2007) (stating that "[f]ederal courts must determine that they have jurisdiction before proceeding to the merits"). The constitutional requirement of standing has three elements: (1) "injury in fact," which is "a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical"; (2) "causation," a "fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant"; and (3) "redressability," a "likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (internal citations and quotations omitted).  At the summary judgment stage, plaintiffs cannot rest on "mere allegations" of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Rather, plaintiffs must demonstrate standing by setting forth "specific facts" by affidavit or other evidence. *Id.*

As has been noted, defendants previously moved to dismiss this action on several grounds, including their assertion that plaintiffs lack standing.  In ruling upon defendants' motions, the court found that plaintiffs' allegations of standing, while conclusory, were sufficient to survive a motion to dismiss. The court determined that plaintiffs "adequately alleged that they were injured by the redirection of funds and resources from their schools to Two Rivers." *Save Our Sch.,* 2006 WL 1827654, at *5.  The court, however, cautioned that "[p]laintiffs . . . retain the burden of presenting, during the later stages of this litigation, evidence to establish that they have been injured in fact by defendants' alleged support of Two Rivers." *Id.* at n.10.

Defendants now assert that plaintiffs have failed to come forward with evidence of injury sufficient to survive summary judgment. Plaintiffs, of course, disagree. Plaintiffs also contend that the recent Supreme Court case, *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 127 S. Ct. 2738 (2007) ("*Parents Involved*"), demonstrates that they have standing. Lastly, plaintiffs attempt to re-assert their claim that Two Rivers' admissions policy is discriminatory, which this court previously dismissed for lack of standing.[3] Plaintiffs' arguments are without merit.

A.   **Failure to Demonstrate Injury**

Defendants contend that plaintiffs do not have standing because they have not demonstrated that they have suffered an injury. To demonstrate injury, defendants assert, plaintiffs must show that their children attend a non-charter school that lost enrollment to Two Rivers (causing a decline in funds allocated to the non-charter school).[4] Defendants contend that plaintiffs do not present any evidence that their children attend a non-charter school that lost enrollment to Two Rivers.[5]

---

[3] This court previously found that plaintiffs did not have standing to challenge Two Rivers' admissions policy because plaintiffs did not allege that any of their children applied to, were deterred from applying to, or intended to apply to, Two Rivers. This court found, however, that plaintiffs had standing to claim that defendants treated Two Rivers more favorably than other District of Columbia schools.

[4] Each DCPS school – charter and non-charter – is allocated funds depending upon the number of students enrolled in that school. A decline in student enrollment represents a corresponding decline in the amount of funds made available to a school.

[5] Defendants present several other arguments in support of their position that plaintiffs do not have standing. Plaintiffs do not address these arguments. Accordingly, these arguments are deemed conceded. *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997)). Briefly, defendants' other arguments related to standing include: (1) Two Rivers' receipt of space at Eliot Junior High School did not deprive

Plaintiffs rejoin that they do show that non-charter schools attended by their children experienced a decline in enrollment due to students leaving for Two Rivers. According to plaintiffs, Two Rivers' own documents show that eight students came from the Peabody School and four from the Watkins School. Plaintiffs further argue that Two Rivers' own documents show that twenty-four students came from other schools on or near Capitol Hill, including Brent, Gibbs, Miner, Noyes, Peabody, Watkins, Wilkerson, and Yorktown. Plaintiffs contend that SOS's members are all represented at these schools, which lost enrollment to Two Rivers.

Defendants' position has merit. Although plaintiffs assert, in their Opposition brief, that SOS's members are all represented at schools that lost students to Two Rivers, plaintiffs fail to cite any exhibits or affidavits to support their assertion. At the summary judgment stage, plaintiffs must present *specific facts* to demonstrate injury; plaintiffs cannot rely on mere allegations. *Lujan*, 504 U.S. at 561 (requiring plaintiffs to come forward with specific facts regarding injury). The court has searched the exhibits and affidavits attached to plaintiffs' Opposition brief and cannot find any evidence to support plaintiffs' assertion that SOS's members are represented at schools that lost enrollment to Two Rivers.

There is one declaration submitted by Gail Sonneman, a representative of SOS, which attests that SOS's members have "school age children in grades K-6 attending a DCPS school in Ward 6." Sonneman Decl. ¶ 3. This declaration, however, is insufficient. The fact that 20% of its membership has children attending a DCPS school in Ward 6 does not, in itself, prove that the

---

any non-charter schools of resources because, by law, Two Rivers is eligible to receive this space only after the D.C. Board of Education determines, pursuant to D.C. Code § 38-1802.09(b)(2)(B)(ii), that no non-charter school needs the space; and (2) Two Rivers' receipt of a one million dollar "City Build" grant did not deprive plaintiffs of funds because non-charter schools are not eligible for City Build funds.

DCPS schools attended by SOS's members in Ward 6 lost enrollment to Two Rivers. Thus, while plaintiffs have alleged that their children attend non-charter schools that lost enrollment to Two Rivers, plaintiffs have failed to present the necessary specific proof that any plaintiff has a child that attends a non-charter school that lost enrollment to Two Rivers. Plaintiffs cannot demonstrate standing through unsubstantiated allegations.

Plaintiffs argue further that, regardless of whether any students left non-charter schools for Two Rivers, the creation of Two Rivers necessarily resulted in fewer available funds for non-charter schools attended by plaintiffs' children. Plaintiffs' argument is confusing. As best the court is able to understand, plaintiffs' argument is as follows: all funds for DCPS schools – charter and non-charter – come out of the education line item in the District of Columbia budget. Both charter and non-charter schools receive the same amount of money per student out of this education line item. The amount received per pupil is calculated pursuant to a "Uniform Per Student Funding Formula" ("UPSFF"). In addition to receiving UPSFF funds, charter schools receive a "facilities allowance" out of the education line item because charter schools must pay the cost of their own facilities, such as rent. Non-charter schools do not receive a "facilities allowance" because the D.C. government provides facilities for non-charter schools from its capital budget. Plaintiffs thus appear to assert that if charter schools did not exist, non-charter schools would receive more money because they would receive the funds set aside for charter schools in the "facilities allowance" in the education line item.

This argument is speculative and entirely unpersuasive. Plaintiffs' argument is premised on the notion that the total amount allocated to the education line item is static, and but for charter schools, non-charter schools would receive the amount set aside for charter school

facilities. There is no basis in the record for plaintiffs' assumption that, but for the existence of charter schools, non-charter schools would receive the funds set aside in the "facilities allowance." The D.C. government could allocate the funds currently set aside for the "facilities allowance" for purposes unrelated to education, such as parks and recreation. Pure speculation is insufficient at the summary judgment stage.

**B.     The Supreme Court's Decision in *Parents Involved***

Plaintiffs assert that the recent Supreme Court decision in *Parents Involved*, 127 S. Ct. 2738, supports their position that they have standing. It does not.

In *Parents Involved*, an organization called Parents Involved in Community Schools ("Parents Involved") brought suit against the Seattle school district, asserting that Seattle's high school assignment plan was racially discriminatory. 127 S. Ct. at 2746. The Seattle school district, which had ten high schools, allowed incoming ninth graders to choose any high school by ranking them in order of preference. *Id.* at 2746-47. Because some schools were oversubscribed, the school district used several "tiebreakers" to determine admission, one of which was race-based. *Id.* at 2747. If the oversubscribed school was not "within 10 percentage points of the district's overall white/nonwhite racial balance," which was 41% White and 59% Nonwhite, then the school district selected students whose race would "serve to bring the school into balance." *Id.* (internal quotations omitted).[6] This system sought to ensure that the racial balance at each school fell "within a predetermined range based on the racial composition of the school district as a whole." *Id*.

---

[6] Before utilizing the race-based tiebreaker, the school district first employed a sibling preference. If the sibling preference and race-based tiebreaker did not fill all the slots, the school district then relied on students' geographic proximity to the school. *Parents Involved*, 127 S. Ct. at 2747.

Parents Involved sought relief on behalf of its members whose "elementary and middle school children may be denied admission to the high schools of their choice [due to race] when they apply for those schools in the future." *Id.* at 2751. Parents Involved contended that the Seattle plan violated the Equal Protection clause of the Fourteenth Amendment because students were assigned to schools based on their race. *Id.* at 2746. The school district argued that Parents Involved had no standing to bring suit. The school district contended that Parents Involved's members would be injured only if their children sought to enroll in a Seattle public high school and chose an oversubscribed school. The school district asserted that this possibility was not imminent and was too speculative for purposes of standing. *Id.* at 2750-51.

Finding that the members of Parents Involved had children who were enrolled in elementary and middle schools, and that these children would be "forced to compete in a race-based system" when applying to high schools, *id.* at 2751, the Supreme Court concluded that Parents Involved had standing. The Court held that being forced to compete in such a race-based system constitutes sufficient injury under the Equal Protection clause. *Id.*[7]

---

[7] Parents Involved's suit was consolidated with a suit against the Jefferson County school district in Kentucky. Jefferson County utilized a school assignment plan that required all non-magnet schools to maintain a minimum Black student enrollment of 15% and a maximum Black student enrollment of 50%. *Parents Involved*, 127 S. Ct. at 2479. At the elementary school level, students were assigned to one of a "cluster" of schools in their geographic area, although kindergartners, first-graders, and students new to the district could request enrollment at a first or second choice school in the cluster. *Id.* After assignment, students could apply to transfer to another school. School assignments, as well as transfer decisions, were based on available space and race, and "a student whose race would contribute to the school's racial imbalance [would] not be assigned there." *Id.* at 2750. While the assignment plans at the middle and high school levels were slightly different, they were the same in that students were not assigned to schools if they would contribute to a racial imbalance. *See id.* n.7.

Crystal Meredith was the plaintiff in the suit against the Jefferson County school district. Meredith's child, Joshua, was enrolled in one elementary school and applied to transfer to another school. His application was denied because he would "have an adverse effect on desegregation compliance." *Id.* Joshua's application was later approved, however.

*Parents Involved* has no bearing on this suit. Even assuming that Two Rivers discriminates on the basis of race, plaintiffs' children here are not forced to apply to Two Rivers. Two Rivers is but one charter school in DCPS. As discussed *infra*, plaintiffs do not offer any evidence that their children have applied, were deterred from applying to, or plan to apply for, admission to Two Rivers. That is, plaintiffs do not demonstrate that they are affected by Two Rivers' allegedly discriminatory admissions policy. Mere generalized grievances do not confer standing. *See Lance*, 127 S. Ct. at 1197.

Plaintiffs also argue that *Parents Involved* demonstrates that they only need to show, at the summary judgment stage, that there is a "plausible and reasonable inference" based "on the evidence submitted by Plaintiffs" that they have suffered injury. Pls.' Opp'n 39. It is not clear how plaintiffs derive this argument from *Parents Involved*. *Parents Involved* does not address the extent to which plaintiffs must support their allegations of standing. *Parents Involved* only addresses the issue of whether plaintiffs in that case did, in fact, suffer injury. The standard for determining whether plaintiffs have sufficiently supported their allegations of standing remains that which was enunciated in *Lujan*, which is that plaintiffs cannot rely on mere allegations and must come forward with "specific facts" to support their allegations of standing. 504 U.S. at 561. For the reasons discussed *supra*, plaintiffs have failed to do so.

## C. Plaintiffs Cannot Reassert Their Discriminatory Admissions Claim

This court previously dismissed, for lack of standing, plaintiffs' claim that Two Rivers' admissions policy is discriminatory. This court recognized that, to bring such a claim, plaintiffs

---

The Supreme Court found that Meredith had standing to challenge Jefferson County's school assignment plan even though Joshua ultimately attended the school that denied his transfer application because "the racial guidelines apply at all grade levels." *Id.* at 2751. That is, upon application to middle school, Joshua might be assigned to a school based on his race. *Id.*

9

must demonstrate that they either have applied, were deterred from applying, or intend to apply for admission to Two Rivers. *Save Our Sch.,* 2006 WL 1827654, at *4 (*citing Gratz v. Bollinger,* 539 U.S. 244 (2003); *Allen v. Wright,* 468 U.S. 737, 755 (1984); *Moose Lodge No. 107 v. Irvus*, 407 U.S. 163, 166-67 (1972)).

This court found that none of the individual plaintiffs had standing to assert this claim because plaintiffs did not allege that any of their children have applied, were deterred from applying, or intend to apply, to Two Rivers. This court further found that none of the plaintiffs' children were even eligible to attend Two Rivers because, at the time the complaint was filed, the highest grade available at Two Rivers was the third grade. All of the plaintiffs' children attend grades higher than third grade. *Save Our Sch.,* 2006 WL 1827654, at *4.

Plaintiffs assert that they now have standing to re-assert their claim because Two Rivers now enrolls students through the sixth grade[8] and at least two individual plaintiffs' children – those of Ardina Edwards and Absalom Jordan – are now eligible to attend Two Rivers. Plaintiffs also assert that several members of SOS have children enrolled in grades K-6 and these children are eligible to attend Two Rivers.

Plaintiffs still do not have standing. As the court pointed out in its earlier Memorandum Opinion, simply having children who are eligible to attend Two Rivers is insufficient to establish standing. *Save Our Sch.,* 2006 WL 1827654, at *4-5. Plaintiffs must show that these children have applied, were deterred from applying, or intend to apply to Two Rivers. Plaintiffs have not made such a showing. Accordingly, plaintiffs do not have standing.

---

[8] At the time the complaint was filed, Two Rivers enrolled only grades K-3.

10

## III.  CONCLUSION

Because plaintiffs do not have standing, the court must grant defendants' motions for summary judgment [#79, 80, 81] and dismiss this action.  Plaintiffs' motion for judicial notice [#89] is denied as it is moot.  An appropriate order accompanies this memorandum opinion.


                                                        Henry H. Kennedy, Jr.
                                                        United States District Judge